## CHARLES E. MERRICK *v.* UNITED RAILWAYS & ELECTRIC COMPANY.

[No. 48, October Term, 1932.]

*Decided January 18th, 1933.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*John E. Magers,* for the appellant.

*Wallis Giffen,* for the appellee.

Bond, C. J., delivered the opinion of the Court.

A plaintiff, in a suit for damages for injuries sustained in a collision of his automobile with a street car, appeals from a judgment rendered against him, and seeks review of the trial court's rulings on prayers for instructions to the jury. The accident occurred on South Broadway, in Baltimore City, in the block immediately north of Fleet Street and the Broadway Market, which stands in the middle of Broadway south from Fleet Street. Broadway is an exceptionally wide street. The plaintiff drove his automobile east out of Fleet Street into Broadway and turned north to find a parking space, and ultimately found one in the triangular

area between the car tracks which come together there from the two sides of the market. As he turned into Broadway the street car was held standing on Broadway south of the Fleet Street crossing. To the north, on Broadway, there were two lines of parked automobiles, one at the curb on the east side of the whole street, and another out near the center of the street, west of the northbound car track. Between the two lines of automobiles a broad street passage and the space occupied by the northbound track lay open. It was in the line out in the street, to the left, or west, side of the northbound track, that the plaintiff found a parking space.

He testified that he drove slowly north on the northbound track for a distance of either seventy-five or one hundred and fifty feet, found this parking place, signaled with his hand, backed to an angle which seemed suitable, found on going forward that he could not enter without striking a fender of another automobile, and then backed out again, and as he stopped on the track for another approach was struck by the on-coming street car. He said that he was never off the track after leaving Fleet Street. Witnesses for the defendant, on the other hand, testified that the plaintiff drove north outside of the track, or in the clear portion of the street to the right, and suddenly turned left across the track in front of the car. The plaintiff and his witnesses agreed with the defendant's witnesses in saying that the bell of the car was kept ringing all the way from Fleet Street, but the plaintiff is deaf, and it is not clear how much of the ringing he heard. He said, however, that he knew the car was approaching, and could see it in his glass. There are some inconsistencies in his testimony on the movement of the street car, but the sum and substance of it is that when he himself was seventy-five or more feet north of Fleet Street he saw the car still at the crossing of that street, that he ran ten or twenty feet farther before maneuvering to go into the parking space, and that when he backed out and stopped just before he was struck he saw the car only ten or fifteen feet away, or "on top of him."

The principal objection to the instructions is that they did

not place before the jury properly the right of the plaintiff to recover for neglect by the motorman to avoid the accident on a last clear chance afforded after the plaintiff's contributory negligence, if such be found, had placed him in a position of peril.

The plaintiff submitted a separate prayer for an instruction as to liability on this ground, but the court refused it and prepared and gave the jury, instead, an instruction of its own. This was that, if the jury found as a fact that the plaintiff proceeded up the track in front of the car and maneuvered across the track to enter the parking space, as he testified, and was struck by the car while doing so, then, if it was also found that the motorman by the exercise of ordinary care could have seen the plaintiff executing his maneuvers while he (the motorman) was sufficiently far away to avoid colliding with the automobile, the verdict should be for the plaintiff. And that instruction was, in the opinion of this court, one of which the plaintiff could not complain. It presented his contention in at least as favorable a light as he could and did ask. But the court also granted, upon prayers of the defendant, instructions that contributory negligence on the plaintiff's part would prevent his recovery; and it is insisted that these instructions are inconsistent, and that the latter call for a verdict for the defendant without the apposite qualification stated in the court's own instruction, and for lack of that qualification would permit the verdict to be rendered on a partial, erroneous view of the effect of the contributory negligence in the case. The court has held that there was no error in rejecting prayers of defendants for this reason in similar situations. *Beall v. Ward,* 158 Md. 646, 149 A. 543; *Pennsylvania R. Co. v. Simmons,* 159 Md. 114, 150 A. 263. Considering now the effect of a granting of such prayers contrary to the contention, we conclude that the likelihood of the jury's being misled in this case, and failing to follow the court's own instruction on this point, is so small as to be negligible, and that reversing the judgment for any inconsistency or lack of completeness in the instructions on the defendant's prayers would be an artificial

treatment of the case, departing from the true purpose of the review on appeal. "It is true the court granted both these instructions, without, so far as the record shows, saying to the jury in express terms that they were to take them in connection one with the other, or that the latter was to be taken as a qualification or modification of the former, but it is so obvious that such was its effect that it is impossible to conceive that a jury of ordinary intelligence could have been in any way misled or confused as to their verdict. Cases no doubt may be found in which this court has reversed judgments on account of the granting of inconsistent instructions, but an examination of them will show that the instructions were such as to afford good reason for supposing that they may have had the effect of misleading or confusing the minds of the jury; but in a plain case like this where there is no reasonable ground for such a supposition, it would be trifling with trial by jury, and with justice itself, to reverse the judgment." *Garey v. Sangston,* 64 Md. 31, 39, 20 A. 1034, 1036; 2 *Poe, Pl. & Pr.,* sec. 303. We hold, therefore, that there is no reversible error in the instructions with respect to liability on a last clear chance to avoid the accident.

Instructions granted at the request of the defendant, that it was the duty of the plaintiff to look before crossing the track, and to exercise care to avoid such an accident, and that if he caused the collision by failure to do these things he could not recover, are objected to on the ground that there was no evidence of failure in these respects. But the duties stated were obviously dictated by ordinary care in the situation described, and failure might be inferred from the testimony that the plaintiff suddenly turned from the clear street into the pathway of the car, which was coming with the bell ringing. It is objected, again, that too much ground of recovery was required to be proved by the plaintiff in an instruction that the burden of establishing "the state of facts alleged in the declaration" by a preponderance of proof satisfactory to the jury rested upon the plaintiff; and in support of the objection reference is made to the decision in *Parr v. Peters,* 159 Md. 106, 150 A. 34, that more than necessary

was required to be proved by an instruction that the plaintiff in that case must show by a preponderance of evidence satisfactory to the jury that the defendant's automobile was at the time of the accident being operated in a reckless and careless manner and with great speed. The present instruction differs, in that it does not so specify the facts to be proved, but requires, generally, that the "state of facts alleged in the declaration" must be proved. It is not a great difference, but it is sufficient to save this instruction, we think, for we do not see that there is any substantial likelihood that, so instructed, the jury would consider it necessary to a verdict for the plaintiff that he prove every fact alleged by him, or more than one sufficient ground as stated in other instructions. The ground of controversy was simple and clear, the jury were instructed fully and specifically on the two versions of the facts, and the case would hardly admit of any such misconception as the plaintiff now fears. *Hall v. Hall,* 6 G. & J. 386, 404. The instruction granted is, in point of fact, a common one.

In another instruction the burden upon the plaintiff was stated to be that of establishing by a preponderance of proof that he received in the accident the injuries he complains of, and it is objected that a preponderance of the evidence is all that can legally be required. We do not see any material difference between evidence and proof for the purposes of the instruction; the jury would not mistake the requirement under either phrasing.

Finally, it is objected that an instruction confining any award of damages to the plaintiff to compensation for the natural direct and proximate results of the accident, and excluding damages from ailments from other causes, was erroneous because there was no evidence of other ailments. We need not inquire whether there was, because there was no special exception taken to the instruction for lack of evidence, and the jury's finding for the defendant on the question of liability left instructions on an award of damages devoid of importance.

*Judgment affirmed, with costs to the appellee.*