SUBSEQUENT INJURY FUND ET AL. *v.* D. ELDRED
RINEHART AND JOHN H. RINEHART ET AL.

[No. 727, September Term, 1970.]

*Decided August 10, 1971.*

The cause was argued before ORTH, MORTON and POW-ERS, JJ.

*William R. Levasseur, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellant.

*Alfred M. Porth,* with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief, for appellees.

POWERS, J., delivered the opinion of the Court.

The Subsequent Injury Fund appeals to this Court from an order of Judge Irvine H. Rutledge in the Circuit Court for Washington County in a case which reached that court from the Workmen's Compensation Commission.

Albert William Schroyer, a 59 year old orchard foreman employed by D. Eldred Rinehart and John H. Rinehart, fell from a tractor in the course of his employment on December 11, 1968, and sustained a head injury. Within a few days he demonstrated symptoms of brain damage. A neurological examination in March of 1969 failed to disclose the reasons for his symptoms. In June of 1969 a further series of neurological tests did disclose the existence of a mass in the brain, and portions of a malignant brain tumor were then surgically removed. Mr. Schroyer died in October, 1969.

After a hearing, the Workmen's Compensation Commission passed an order on February 9, 1970 awarding death benefits to the widow and dependent daughter of the deceased. The Commission found "that the Subsequent Injury Fund is not applicable".

The employer and insurer duly filed in the circuit court an order for appeal and a petition, asking that the Commission's order be reversed or modified to find either that the employee's death was not causally related to the ac-

cident, or that it was in part causally related to a pre-existing disease, disability or condition. When the death claim was filed before the Commission, the insurer raised the issue of whether the death was due to a pre-existing condition, disease or disability, and asked the Commission to "implead the Subsequent Injury Fund". The Commission was thus required, under Code, Art. 101, § 66 (5) to request the Attorney General to furnish a member of his staff to represent the Fund. An Assistant Attorney General did appear and participate in the hearing.

The appeal to the circuit court was captioned against the claimants and the Subsequent Injury Fund, and the Fund answered and participated fully as a party throughout the proceedings in the circuit court. As we pointed out in *Subsequent Injury Fund v. Howes,* 11 Md. App. 325, 333-4, 274 A. 2d 131, (certiorari denied by the Court of Appeals, May 3, 1971) the Fund had no standing there to do so, but does have standing to appeal to this Court. See also *Subsequent Injury Fund v. Deeds,* 11 Md. App. 335, 337, 273 A. 2d 817.

In the circuit court the case was tried before a jury, to which two issues were submitted for answers. They were:

> "1. Was the death of Albert William Schroyer causally related to the accidental injury which he suffered on December 11, 1968?
> 2. Was the death of Albert William Schroyer wholly due to the accidental injury of December 11, 1968?"

The insurer filed a motion asking the court to direct the jury to answer Issue No. 2 "No", and the court reserved its decision. The jury answered "Yes" to each issue. Thereafter Judge Rutledge filed an opinion and order, granting the insurer's motion that the answer to Issue No. 2 must, as a matter of law, be "No", and remanding the case to the Commission "for a determination of percentages". The effect of the circuit court order was

to hold that the employee's death was due in part to a previous impairment and in part to the subsequent accidental injury, and to require the Commission to determine the proportion reasonably attributable to each. Code, Art. 101, § 66 (1).

In this appeal the Fund contends that Issue No. 2 was properly one of fact for the jury, not one of law for the court, and that the Fund is not liable, because the deceased, before the accident, had no permanent impairment that was or was likely to be a hindrance or obstacle to his employment. The factual premise to its legal contention is simply not tenable. While several lay witnesses testified that prior to the injury, they had observed no impairment of the decedent's health or physical condition which was a hindrance or obstacle to his employment, the undisputed expert medical evidence was that the brain tumor pre-existed the accident. It was also undisputed that death was caused by the cancerous tumor, and that the progression of the fatal tumor was accelerated by the injury.

The Fund argues strenuously that there was no pre-existing impairment of which decedent or anyone else was *aware* at the time, and that decedent had not experienced, *before the injury,* any hindrance to his employment, and reasons that the disease was not one contemplated under § 66 (1). The neurosurgeon who testified said that the decedent suffered from an astrocytoma, a malignant brain tumor which physicians classify in four grades. All are malignant, and all are fatal. None can be caused by trauma. A patient with Grade I, if operated upon and with follow-up treatment, may live from five to fifteen years, or an average of about ten years. A patient with Grade II may survive three to five years. A patient with Grade III or IV can be expected to survive only for a few months to a year. The decedent's fatal tumor was classified as Grade III or IV.

Upon this evidence we can find no factual issue for the jury, and the trial judge was correct in ruling, retrospectively, that as a matter of law the decedent, at the

time of the injury, had a permanent impairment due to disease which was likely to be a hindrance to his employment, and his death was due in part to that impairment. That the neurosurgeon was unable to give an opinion as to the size, condition or grade of the tumor at the time of the accidental injury is of no significance, in the light of the evidence that it did exist, and that its progress was accelerated by the injury, and because of the acceleration, death occurred sooner than it would have occurred without the injury. That existence of the tumor was not known, or even that it could not have been discovered, at the time of the injury, is likewise of no significance. It seems too obvious to require discussion that a disease which will cause death some time between a few months and ten years is a permanent impairment likely to be a hindrance to employment.

In *Bosley v. Jackson*, 250 Md. 401, 243 A. 2d 513, the Court of Appeals considered whether the disability of an employee was caused in part by the accidental injury in the course of employment and in part by a pre-existing condition of hypertension, arteriosclerosis and enlarged heart. The Commission had held that the disability resulted solely from the accidental injury, and the Superior Court of Baltimore City had affirmed that decision. The effect was to deny reduction of the award by apportionment under Code, Art. 101, § 36 (7). The Court of Appeals held that the Commission and the lower court were clearly erroneous in not applying apportionment, and said, at page 405:

> "The appellee contends that the issue of whether the claimant's injury was due in part to a pre-existing condition is for the trier of fact and that therefore the decisions of the Commission and of the Superior Court of Baltimore City must be affirmed. While this is ordinarily true, there was, in the instant case, uncontradicted testimony by the only medical expert who testified that the claimant's injury was due in part to a pre-existing disease or infirmity."

The Fund relies upon *Old v. Cooney Detective Agency,* 215 Md. 517, 138 A. 2d 889, but that case merely presents the other side of the coin in holding that although it was thin, there was enough medical evidence to create an issue of fact for the jury. See also *Cabell Concrete Block Co. v. Yarborough,* 192 Md. 360, 64 A. 2d 292.

In its brief the Fund sees a need to construe and clarify the differences between the standards for apportionment set out in Art. 101, § 36 (7) and in Art. 101, § 66 (1). The case before us requires no such clarification, if indeed any clarification is required at all. Section 36 (7) applies only when there is a permanent disability which does not amount in extent to more than 50% of the body as a whole. The purpose of the apportionment under § 36 (7) is that the employer be required to pay for no more than that portion of the ensuing disability that is attributable to the additional accidental injury sustained in his employ. When the apportionment required by § 36 (7) is applicable, the injured employee is compensated only for the disability resulting from his additional accidental injury.[1]

On the other hand, § 66 (1) appears to be directed to a somewhat different social and economic public policy. When an employee sustains an accidental injury in the course of his employment, and such injury, combining with a pre-existing "permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment", contributes to his death, or contributes to a disability which is greater than 50% of the body as a whole, it is the declared intent of § 66 (1) "to make the total payments to which such employee shall become entitled equal to the compensation that would be due for

---

1. If the nature of the pre-existing disability was such that a waiver was required by § 36 (1) (b), and the employer failed to obtain the waiver, there is no apportionment, and he pays compensation for the full extent of the disability. For a discussion of when a waiver is required, see *Symons v. R. D. Grier & Sons,* 10 Md. App. 498, 502-504, 271 A. 2d 398.

the combined effects of the impairment and the subsequent injury".

Section 66 (1) clearly applies here, and the Fund must pay an apportioned share of the death benefits.

*Order affirmed.*
*Appellant to pay costs.*