LOVING HELICOPTERS ET AL. *v.* HELEN
G. KAUFMAN ET AL.

[No. 188, September Term, 1971.]

*Decided November 17, 1971.*

The cause was argued before MORTON, CARTER and GILBERT, JJ.

*B. Ford Davis,* with whom were *Whiteford, Taylor, Preston, Trimble & Johnston* on the brief, for appellants.

*Glenn C. Parker,* with whom were *Theodore B. Cornblatt* and *Smith, Somerville & Case* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

A firey helicopter crash on September 1, 1966 claimed the lives of Lesco Kaufman, the helicopter pilot, and Marie McDonald, a news broadcaster.

A claim was duly filed with the Workmen's Compensation Commission, on behalf of Mr. Kaufman's widow, against Loving Helicopters, a division of Loving Chevrolet, Inc., (Loving). Loving raised an issue as to whether or not the decedent was an employee of WWDC, Inc. A number of other issues were also raised before the Commission, but we are concerned here with only the one, viz., whose employee was Kaufman at the time of the accident?

The Commission decided the case adversely to Loving,

and at a rehearing, requested by Loving, the Commission affirmed its former decision.

Loving then appealed to the Superior Court of Baltimore City. The matter was submitted to Judge Meyer M. Cardin on the record of the proceedings before the Commission and he affirmed the decision of the Commission.

The testimony reveals that WWDC, Inc., a Washington, D. C. based radio station, acquired from Loving in 1965 a helicopter for use in broadcasting motor traffic information in and around the District of Columbia.

Loving contracted to maintain the helicopter and to supply a qualified pilot to fly it—both at the rate of $30.20 per hour. The traffic information flights were to take place on Monday through Friday during the hours of 6:00 a.m. to 9:00 a.m., and 4:00 p.m. to 6:30 p.m. If additional flight time was desired by WWDC, it was required to notify Loving at least 12 hours prior to the time of the desired use of the helicopter.

Kaufman had been a pilot for Loving for approximately nine months prior to his death. He was hired by Loving after they had determined his qualifications, and he was paid a regular monthly salary by Loving irrespective of the number of hours he actually flew.[1] Only Loving had authority to terminate Kaufman's services. If WWDC had expressed dissatisfaction with Kaufman, Loving could have supplied any other qualified pilot to WWDC. The contract between Loving and WWDC provides in part that Loving will:

> "(b) Provide as part of the personnel included in sub-paragraph (a) hereof a qualified helicopter pilot with a minimum of 1,000 hours of helicopter flight time, between the hours of 6:00 and 9:30 a.m. and 4:00 and 6:30 p.m., Monday through Friday of every week during the term

---

1. Kaufman apparently made at least one personal appearance with the broadcaster to promote WWDC traffic reports for which he received a "talent fee" of $50.00.

of this contract, or for such part thereof as WWDC may from time to time designate."

* * *

"(d) Have the aforesaid pilot and aircraft available for such additional flying time as WWDC shall request on 12 hours notice by WWDC to LOVING, and that LOVING shall use its best efforts to have the pilot and aircraft available on ½ hours notice from WWDC."

Additionally, it was covenanted between the parties that:

"3. * * *

(b) LOVING shall not be required to operate HELICOPTER in violation of any Federal, State or Municipal law or regulation and that LOVING or its designated pilot shall have the right of decision in all matters regarding safety of operation."

Mr. Joseph K. Culver, the Secretary-treasurer of Loving, testified that as far as he knew, Kaufman flew the WWDC helicopter most of the time. He said that WWDC determined when the aircraft would be flown and where, and that the pilot, when he returned at the end of a day's flight, would "* * * give us a flight report that he flew four hours and a half or three hours and ten minutes and that was the basis for the billing to WWDC." Payments by WWDC were made to Loving on the basis of the number of hours that the helicopter was utilized.

The testimony of representatives of WWDC was to the effect that the radio station made no decision regarding the flight plan or whether or not the weather was suitable for flying.

Loving argues that the helicopter was owned by WWDC, and that while it was operated by a loaned employee, it was, nevertheless, under the control of the broadcaster. They reason that the radio traffic report broadcaster must have directed the pilot's operation to

various traffic sites. The radio station, however, denied any knowledge of such arrangement and there is nothing in the record to support Loving's hypothesis relative to the radio station's employee directing the pilot where to fly.[2]

The decedent had duties delegated to him by Loving other than flying the helicopter, although the overwhelming majority of his working hours was spent flying the WWDC helicopter. Kaufman also flew other helicopters for Loving, including some charter flights unconnected with WWDC. Additionally, he endeavored to sell helicopters for Loving.

A decision of the Workmen's Compensation Commission is *prima facie* correct and the burden of proving otherwise rests upon the party attacking it. *Uninsured Employers' Fund v. Merritt*, 13 Md. App. 73; *Zentz v. Peters & Taylor, Inc.*, 11 Md. App. 1 (1971); *Symons v. R. D. Grier & Sons*, 10 Md. App. 498 (1970). See also *Thompson v. Paul C. Thompson & Sons*, 258 Md. 391 (1970); *Talley v. Dept. of Correction*, 230 Md. 22, 24 (1962); *Williams Construction Co. v. Bohlen*, 189 Md. 576, 580 (1948). "However, * * * where the Commission has considered conflicting evidence of essential facts, and has drawn one of two different permissible inferences, there may be imposed upon the party attacking the decision of the Commission 'merely a burden of persuasion, and not necessarily a burden of additional proof.' " *Williams Construction Co., supra.*

Judge Cardin, sitting without a jury, drew from the evidence the same inferences as the Commission, i.e., that Kaufman was Loving's employee, not WWDC's. In *Thompson v. Paul C. Thompson & Sons, supra,* the Court of Appeals said:

---

2. Although not argued below or here, Federal Aviation Regulations, Sec. 91.3, provides:
"Responsibility and authority of the pilot in command:
(a) The pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft.
(b) In an emergency requiring immediate action, the pilot in command may deviate from any rule of this subpart or of subpart B to the extent required to meet that emergency."

"It is equally well settled that where the terms
and manner of employment are disputed, and
different inferences may be drawn therefrom,
the issue as to the relation that existed between
the parties is a mixed question of law and fact to
be determined by the trier of the facts under
proper instructions."

See also *Uninsured Employers' Fund v. Merritt; L & S
Construction Co. v. State Accident Fund*, 221 Md. 51, 59
(1959) ; *Talley v. Dept. of Correction, supra.*

The Court of Appeals and this Court have set forth the
criteria that may be considered in determining the mas-
ter-servant relationship, which in turn is the underlying
basis for the employer-employee relationship. They are:

"(1) The selection and engagement of the ser-
vant; (2) the payment of wages, (3) the power
to discharge, (4) the power to control the ser-
vant's conduct and (5) whether the work is a
part of the regular business of the employer.
Standing alone, none of these *indicia* excepting
(4) seems controlling. The decisive test is
whether the employer has the right to control
and direct the servant in the performance of his
work and in the manner in which the work is
to be done." *Keitz v. National Paving & Con-
tracting Co.*, 214 Md. 479, 491 (1956) ; *Merritt,*
supra.

In *Anderson Nursing Homes v. Walker*, 232 Md. 442
(1963), the Court of Appeals reversed a decision of the
Baltimore City Court, holding Mrs. Walker to be the
employee of the nursing home. There, a Mrs. Whitney
had had a stroke and was an invalid-patient in the Home.
At her nephew's request, the Home obtained special
nurses to care for Mrs. Whitney. As an accommodation
to the patient, the Home requested three nurses from
the Baltimore Nurses Exchange. Among the three was
Mrs. Walker. The only task assigned to her was caring
for Mrs. Whitney, and she was paid at that time the

standard rate of $13.50 per day. While Mrs. Walker was on duty, she was solely responsible for Mrs. Whitney's care. She did no work for the nursing home. The Home exercised no control over her duties as long as she conformed to the standards of orderly and proper conduct. As a matter of convenience, the Home paid Mrs. Walker and was reimbursed from Mrs. Whitney's trust income monthly. The trust likewise reimbursed the Home for drugs, medicines and newspapers procured by the Home for her. Mrs. Walker did not appear on the records of the Home as an employee, nor did they withhold federal or state income taxes or social security taxes. The Whitney trust also paid Mrs. Walker's bill for board.

Judge Hammond (now Chief Judge) in *Anderson* noted that 1 Restatement, *Agency* 2d, Sec. 220, added two additional considerations there pertinent to the criteria found in *Keitz*, supra:

> "(a) Whether the work is usually done, in the environment, under direction of the employer or by a specialist, without supervision, and (b) the skill required in the occupation."

The Court of Appeals concluded under the "tests" that Mrs. Walker was not an employee of the nursing home.

Here, there was evidence which, if believed, established that Loving had the right to control and direct Kaufman in the performance of his work. Loving determined whether or not Kaufman was to fly the ill-fated helicopter and when he was to fly it. We think that this control by Loving meets the "decisive test" set forth in *Keitz*. The other criteria of *Keitz* and *Anderson* were also answered adversely to Loving by the testimony. It was Loving who hired Kaufman; it was Loving who paid Kaufman on a regular monthly basis; it was Loving who had the authority to terminate Kaufman's services; it was Loving who controlled Kaufman's conduct, and the work performed by Kaufman was part of Loving's regular business. The flying of the helicopter on behalf of Loving by Kaufman was performed by him as

a specialist, without supervision by Loving, and apparently without supervision of WWDC.

Applying the rule set forth in *Thompson v. Paul C. Thompson & Sons, supra,* that it is for the trier of the facts to resolve mixed questions of law and fact to this case, we cannot find that the trial judge's affirmation of the decision of the Workmen's Compensation Commission was clearly erroneous.

*Judgment affirmed.*
*Costs to be paid by appellants.*