## GEORGE E. DENT, JR. ET AL. *v.* MILDRED E. CAHILL

[No. 609, September Term, 1972.]

*Decided June 6, 1973.*

118

The cause was argued before MOYLAN, POWERS and GILBERT, JJ.

*Hugh E. Donovan,* with whom were *Donahue & Ehrmantraut* on the brief, for appellants.

*James P. Salmon,* with whom were *Kevin J. McCarthy* and *Sasscer, Clagett, Channing & Bucher* on the brief, for appellee Mildred E. Cahill and *William H. Kable, Special Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for Subsequent Injury Fund.

GILBERT, J., delivered the opinion of the Court.

This appeal presents two questions for our review, scilicet, the burden of proof thrust upon a party appealing to a trial court from a decision of the Workmen's Compensation Commission, and the purpose of the Subsequent Injury Fund.

The appellee, Mildred E. Cahill, on January 4, 1971, slipped on some ice on a parking lot while she was walking to the office where she was employed. The accident occurred on the property of Mrs. Cahill's employer, George E. Dent, Jr. (Dent), appellant. The appellee was admitted to Providence Hospital where she remained for a period of over one month. A claim was filed in the Workmen's Compensation Commission (Commission) by the appellee, and Dent

interpleaded the Subsequent Injury Fund (Fund). A hearing was held on April 18, 1972 before the Commission. The record of that hearing discloses that Mrs. Cahill had sustained previous injuries and that she suffered from a pre-existing disease styled osteoporosis.[1] Mrs. Cahill told the Commission how the accident of January 4, 1971 had occurred. She described in some detail the nature of her complaints and her physical condition and compared her state of health after the time of the accident to what it was prior to that date.

Medical reports of Drs. Wallace, Fowler, Cobey, and Mendelsohn were received into evidence. Dr. Wallace's report said that Mrs. Cahill "is totally and permanently disabled," but did not allocate a percentage to either the pre-existing condition or to the injury resulting from the accident of January 4, 1971. Dr. Fowler's latest report stated, "It is my feeling at this time that [Mrs. Cahill] does have a permanent partial disability related to an aggravation of a preexisting condition which is equal to fifteen percent of the body." Dr. Cobey's report said in part, " . . . Mrs. Cahill is 100% disabled . . ., thirty five percent is due to the additional injury of [January 4, 1971].[2] The medical report of Dr. Mendelsohn, who examined Mrs. Cahill at the request of the Fund, narrated in pertinent part, " . . . I feel that 50% of her permanent disability is related to the fall with the resulting spinal injury and the other 50% relates to the osteoporosis with recurrent injury she has had in that regard."

---

1. This disease is defined in Maloy's *Medical Dictionary for Lawyers* (1942) as the "[a]bsorption of parts of the bone so that it becomes abnormally porous. The canals enlarge and spaces or cavities in the bone become larger." According to the medical testimony in this case the condition is "the result of a loss of protein from bone substance" whereby the "bone as a structure is . . . weakened."

2. The medical report actually refers to the date of July 26, 1971. There was no testimony of any accidental injury occurring to Mrs. Cahill on July 26. An examination of the record, and most particularly of Dr. Cobey's reports, indicates that he first saw Mrs. Cahill on July 26, 1971. Although in his medical report of that date he refers to the accident as happening in January, 1971, his subsequent reports incorrectly state the date of the accident as July. It is patent from a reading of the record that the doctor was referring to the accident of January 4, 1971, and that the parties hereto have accepted January as the correct date.

The Commission passed a "Supplemental Award of Compensation" dated April 27, 1972, in which it determined, *inter alia*, that Mrs. Cahill "had a prior permanent impairment of a back condition and a bone disease . . . that . . . was a hindrance to [her] employment"; that the subsequent accidental injury of January 4, 1971, combined with the previous permanent impairment, resulted in "a permanent disability exceeding 50% of the body as a whole"; and that Mrs. Cahill's "permanent disability is substantially greater by reason of the combined effects of the previous permanent impairment and the subsequent injury than that which would have resulted from the subsequent injury alone." The Commission found "that 60% of the disability is reasonably attributable to the . . . accidental injury, and 40% thereof is due to a pre-existing condition." Thereupon the Commission ordered Dent to pay Mrs. Cahill compensation for permanent total disability at the rate of $66.67 per week, beginning May 31, 1971,[3] and not to exceed $27,000.00. The Fund was ordered to pay Mrs. Cahill compensation at the rate of $66.67 per week, commencing at the end of the payments ordered to be paid by Dent, and not to exceed $18,000.00. Thus, Mrs. Cahill was awarded permanent total disability payable at the rate of $66.67 per week, not to exceed $45,000.00.

Aggrieved at the decision of the Commission, Dent and the Fund appealed to the Circuit Court for Prince George's County. At the non-jury trial in the Circuit Court, Mrs. Cahill and Dr. Fowler testified. The other medical reports were submitted with the record made before the Commission. Mrs. Cahill's testimony was substantially the same as that given before the Commission. Dr. Fowler told the trial judge that he felt Mrs. Cahill was less than totally disabled and that he "estimated the disability that [he] could directly and causally relate to these fractures to be 15 percent of the body as a permanent and partial disability." The fractures to which the doctor referred were those

---

**3.** The Commission found Mrs. Cahill to be "temporarily totally disabled from January 5, 1971 to May 30, 1971."

occurring as a result of the accident of January 4, 1971 when Mrs. Cahill fell and fractured her 9th and 11th dorsal vertabrae.

The trial court then made the following significant comments:

" ... [I]n an appeal from Workmen's compensation, it is the job of the trier of the facts on such an appeal to decide those issues of fact as to the finding of the Commission, and unless it finds as a matter of law that they are clearly erroneous, the Commission being a specialized agency of the government delegated with the responsibility and the alleged expertise in the field to make such determinations as a result of the evidence produced on behalf of the claimant, the law is well established in Maryland that the findings of the Commission are prima facie evidence as to the facts and their interpretation of those facts. *It's the responsibility of the appellant to prove by the preponderance of the evidence that those findings are incorrect.*

... It is conceded by all counsel that there is no evidence, medical evidence, indicating a 60 percent disability, permanent in nature. . . . The evidence would indicate while [Mrs. Cahill] may have been employed full time [prior to the accident of January 4, 1971], her type of employment factually was restricted. She was restricted in her type of work that she could do. I think she indicated she had problems with the files, that was the heaviest type work she could perform, and she testified that way here today.

\* \* \*

"It is rather apparent the Commission in the exercise of its judgment in an allocation of percentage of injury had no medical evidence to support its finding. The medical evidence in the

case is nonexistent to support 60 percent as a result of the injury, employability evidently being the basis of the Commission's finding that this injury caused 60 percent, and *I would not so find if it were my prerogative to evaluate the evidence.* I would reverse it." (Emphasis supplied).

After reciting the various doctors' findings in terms of percentage of disability attributable to the accident, the trial judge then said:

"But fortunately, or unfortunately, this member of the bench has not seen fit to usurp that discretionary prerogative delegated to administrative bodies in a specialty, unless it is clearly erroneous, arbitrary, capricious, amounting to an improper exercise of that delegated responsibility. I do not profess to be an expert as to what employability would make as a contribution to determine percentages of an allocation. I may disagree with it, but I am not convinced by a preponderance of the evidence that I have heard that it is erroneous and not based upon facts which their finding can be sustained by, and neither in this area nor in a zoning area do I intend to substitute my judicial discretion in the evaluation of the determination of facts until I find them to be in the category that it was not based on a preponderance of the evidence.

Therefore, an order shall be prepared in this case to affirm the findings of the Commission. . . . I repeat, I am not certain if I were on the Commission I would agree with it, but I can't determine from the evidence I have here today that it is erroneous, and that the appellant has by a preponderance of the evidence convinced me that the finding of the Commission is improper."

Dent appealed to this Court and avers that the trial judge was in error when he decided that he did not have the prerogative to review the evidence. Dent further maintains

that the trial court employed the wrong standard in determining the burden of proof in an appeal to the trial court from the Workmen's Compensation Commission.

This Court has had several occasions recently to speak on the subject of the burden of proof relative to an appeal from a Workmen's Compensation case. *See ABC Day Care Center, Inc. v. Browne,* 17 Md. App. 470, 302 A. 2d 708; *William J. Burns Int'l Detective Agency, Inc. v. Ferris,* 16 Md. App. 568, 299 A. 2d 487 (1973); *Holbrook v. GM Assembly Division, General Motors Corp.,* 15 Md. App. 425, 291 A. 2d 171 (1972); *Carling Brewing Co. v. Belzner,* 15 Md. App. 406, 291 A. 2d 175 (1972); *Yelton v. Higgins,* 13 Md. App. 599, 284 A. 2d 857 (1971); *Loving Helicopters v. Kaufman,* 13 Md. App. 418, 283 A. 2d 640 (1971); *Winters v. Payne,* 13 Md. App. 327, 283 A. 2d 807 (1971); *Uninsured Employers' Fund v. Merritt,* 13 Md. App. 73, 281 A. 2d 411 (1971). In each of those decisions we have meticulously pointed out that the decision of the Workmen's Compensation Commission is *prima facie* correct and the burden of proving otherwise is upon the party attacking that decision. We have previously stated, and we reiterate here, that where the evidence is conflicting and gives rise to one of several inferences, the party attacking the decision of the Commission has merely a burden of persuasion and not the burden of providing additional proof.

A clear statement of the law is found in Pressman's *Workmen's Compensation in Maryland,* § 4-25(2) wherein it is said:

"Even though the decision of the Commission is presumed to be correct and the burden is upon the party attacking the decision, it is not necessarily a burden of additional proof. It means that if the mind of the trier of facts or the minds of the jury are in equal balance on the evidence, the finding of the Commission should be affirmed. If the appellant can convince the trier of facts (even if tried on the Record) that the Commission erred in

interpreting the facts, he has met the burden of proof." (Citations omitted).

*See ABC Day Care Center, Inc. v. Browne, supra.*

We think it apparent from a reading of the trial judge's statement as a whole that we are here engaged in an exercise of semantics in applying the question of "burden of persuasion" *vis-a-vis* "preponderance of the evidence. *See ABC Day Care Center, Inc. v. Browne, supra; Morris v. Christopher,* 255 Md. 372, 258 A. 2d 172 (1969), and *Merrick v. United Rwys. Co.,* 163 Md. 641, 163 A. 816 (1933).

Judge McWilliams, for the Court of Appeals, in *Blake Construction Co. v. Wells,* 245 Md. 282, 225 A. 2d 857 (1967), said, at 286:

> The decision of the Commission is, of course, prima facie correct and the burden of proof is upon the party attacking the same. Code, Art. 101, § 56(c). *This means nothing more than that, if the mind of the trier of facts is in equal balance on the evidence in the record, the finding of the Commission should be affirmed."* (Emphasis supplied) (Citation omitted).

*See also Morris v. Christopher, supra.* The rule of *Blake Construction Co., supra,* is carved from the rule applicable to the burden of proof in a negligence case where if the mind of the trier of fact be in a state of equipoise, the verdict must be for the defendant. In a Workmen's Compensation appeal, if the mind of the trier of the fact be in a state of equilibrium, the Commission's decision must be affirmed.

Nevertheless, we are required to reverse the judgment of the trial court because of that court's erroneous conclusion that it lacked the "prerogative to evaluate the evidence."

Md. Ann. Code Art. 101, § 56(a) provides in pertinent part:

> " ... [T]he court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has

misconstrued the law and facts applicable in the case decided."

Not only may trial courts, on appeal from decisions of the Commission, decide whether the Commission misconstrued the facts, but they may also decide how the facts should have been construed. *Greene v. Yeager,* 222 Md. 411, 160 A. 2d 605 (1960); *Bethlehem Steel Co. v. Mayo,* 168 Md. 410, 177 A. 910 (1935).

As we have previously observed, the Commission found that Mrs. Cahill had sustained a permanent total disability and that 60% thereof was attributable to the accident of January 4, 1971, and the trial judge affirmed the decision of the Commission. Because of the remarks made by the trial judge, however, we are unable to conclude whether he disagreed with both of the findings of the Commission but, nevertheless, followed them because of his erroneous belief that he was bound to do so, or whether he agreed with one of the findings but not the other. Under the circumstances here, we deem it advisable to invoke the authority granted us under Rule 1085 and to discuss briefly the law pertaining to permanent total disability.

Md. Ann. Code Art. 101, § 36(1) (a) provides, in pertinent part:

> "Loss or loss of use of both hands, or both arms, or both feet or both legs, or both eyes, or of any two thereof, shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts."

The Court of Appeals said in *Mureddu v. Gentile,* 233 Md. 216, 220, 196 A. 2d 82 (1964):

> "This Court has held that under our Act, total permanent disability means incapacity to do work of any kind. *Jewel Tea Co. v. Blamble,* 227 Md. 1, 174 A. 2d 764 [1961]; *Congoleum Nairn, Inc. v. Brown,* 158 Md. 285, 148 A. 220 [1930]."

In *Richard F. Kline, Inc. v. Grosh,* 245 Md. 236, 226 A. 2d

147 (1967), the Court approved a jury instruction which read in part:

"[T]otal disability means incapacity to do work of any kind and not mere incapacity to perform that work which the employee was accustomed and qualified to perform before the injury. So what you have to decide here is whether or not there is evidence to show that [the] Claimant is not able to perform; that he is so disabled that he is incapable of performing work of any kind."

The Court stated, at 244:

"This instruction is in keeping with the test for permanent total disability adopted by this Court in *Congoleum Nairn v. Brown*, [*supra*]; and followed in *Mureddu v. Gentile*, [*supra,*] and *Jewel Tea Co. v. Blamble*, [*supra*]."

In the case at bar, there was evidence from Dr. Fowler that Mrs. Cahill apparently was able to perform some duties. He said, "I think she should try. One can really determine what she can do if she tried to go back. . . ." The other doctors felt, however, that she was permanently totally disabled.

We opine that the words "incapacity to do work of any kind" are not to be construed to mean that the injured employee is reduced to the status of abject helplessness, but rather they mean that the services he can perform are so narrowed that a ready market for the services is not to be found.

Judge Finan, speaking for the Court of Appeals in *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 265 A. 2d 871 (1970), quoted from Larson's *The Law of Workmen's Compensation*, Vol. 2, § 57.51, wherein it is stated:

" 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a

finding of total disability nor require that it be reduced to partial. The task is to phrase a rule delimiting the amount and character of work a man can be able to do without forfeiting his totally disabled status. The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:

> 'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' (*Lee v. Minneapolis St. Ry.*, 230 Minn. 315, 41 N.W.2d 433, 436 (1950)."

*See also Petrone v. Moffat Coal Co.*, 427 Pa. 5, 233 A. 2d 891, 893-894 (1967), and Pressman's *Workmen's Compensation in Maryland*, 1972 Supp., § 3-2.

While we recognize that the discussion in *Babcock & Wilcox, Inc., supra*, was dicta, we, nevertheless, hold it to be a correct statement of the Maryland law on permanent total disability.

Under the provisions of Md. Ann. Code Art. 101, § 36(1) (a) the Commission, as the original fact finder, is required to determine permanent total disability upon the facts of each particular case. On appeal to the trial court, the court in a non-jury trial, or the jury if there be a jury trial, may disagree with the Commission's interpretation of the facts and arrive at a different conclusion, *Richard F. Kline, Inc. v. Grosh, supra*, subject to the caveat that the decisions of the Commission are *prima facie* correct, Md. Ann. Code Art. 101, § 56(c).

On oral argument, it was stipulated that Mrs. Cahill had incurred a 100% permanent total disability. As a result of our remand the trial court may, after weighing the evidence, conclude that the Commission incorrectly apportioned the disability suffered by Mrs. Cahill. We do not imply that the

decision of the Commission was wrong. On the contrary, it may well be correct, and the trial court, after weighing the evidence and drawing rational inferences therefrom, might arrive at the same conclusion as did the Commission.

Dent argues that the Subsequent Injury Fund was created "as an incentive to employers to hire handicapped workers" and is of "paramount importance to the general welfare of the State of Maryland." He contends that decisions which dissipate the Act's benefits to employers have a direct bearing "upon the employers' desire to hire handicapped workers," and inferentially a proportionate effect upon the general welfare of the State of Maryland.

This Court, in *Reliance Insurance Co. v. Watts*, 16 Md. App. 71, 293 A. 2d 836 (1972), quoted from *Subsequent Injury Fund v. Pack*, 250 Md. 306, 242 A. 2d 506 (1968), wherein the Court said of the purpose of the Subsequent Injury Act:

> "Its purpose was to persuade the employer to employ the handicapped individual by limiting the liability, which the employer may otherwise have incurred, in the event that previously disabled or injured individual sustained a subsequent occupational injury, although not of itself disabling, but which, coupled with previous impairment, rendered the individual permanently disabled, thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries. By the terms of the statute, if the employee sustained a subsequent compensable disability but the cumulative effect of the disability and the prior disability resulted in a permanent total or permanent partial disability, the employer and his insurance carrier would only be liable for compensation payable by reason of the subsequent injury."

The policy of our legislature has been spelled out in Md. Ann. Code Art. 101, § 66(1), wherein it is said, in pertinent part:

> "Whenever an employee who has a permanent

impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury."

What this Court, in *Subsequent Injury Fund v. Chapman,* 11 Md. App. 369, 274 A. 2d 870 (1971), *aff'd mem.,* 262 Md. 367, 277 A. 2d 444 (1971), said at Note 2 relative to the old Second Injury Fund is equally applicable here:

"In simple terms, the employer was liable only for the compensation payable for the current injury; the Fund was obligated to pay the rest."

There is nothing, however, in the legislative policy as quoted above in *Reliance Insurance Co. v. Watts, supra,* or in *Subsequent Injury Fund v. Rinehart,* 12 Md. App. 649, 280 A. 2d 298 (1971) that directly or indirectly suggests that the Fund shall bear more than its lawful proportionate share of disability suffered by an injured employee. Neither the social nor economic policy of § 66(1) requires shifting to the Fund any portion of the employer's obligation. The employer is required to pay no more than that portion of the disability attributable to the additional accidental injury, *Subsequent Injury Fund v. Rinehart, supra,* and he is obligated to pay no less.

> *Judgment reversed and case remanded for a new trial with costs to abide with the results thereof.*