EDWARD THOMAS *v.* BALTIMORE COUNTY REVENUE AUTHORITY ET AL.

[No. 116, September Term, 1974.]

*Decided October 23, 1974.*

262

The cause was argued before ORTH, C. J., and MOYLAN and GILBERT, JJ.

*Joel H. Pachino*, with whom were *Friedman, Pachino & Friedman* and *George D. Edwards* on the brief, for appellant.

*Alfred M. Porth*, with whom were *Theodore B. Cornblatt*

and *Smith, Somerville & Case* on the brief, for appellee, Baltimore County Revenue Authority and Insurance Company of North America. *J. Kent Leonnig, Special Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William H. Kable* and *Albert A. Levin, Special Assistant Attorneys General,* on the brief, for appellee, Subsequent Injury Fund.

GILBERT, J., delivered the opinion of the Court.

Edward Thomas (Thomas), appellant, during the course of his employment by the Baltimore County Revenue Authority (County), was injured. Thomas, then age 65, was pulling a lawn mower when he hurt his back. The injury, which occurred on May 25, 1970, led Thomas to file a claim under the Workmen's Compensation Law, Md. Ann. Code art. 101. The County raised the issue of "apportionment" and impleaded the Subsequent Injury Fund as a party. The Workmen's Compensation Commission, in a "Supplemental Award of Compensation"[1] found that Thomas had "sustained a permanent partial disability under 'Other Cases'[2] amounting to 60% industrial loss of use of his body as a result of the injury to the lumbosacral area ... and ... 40% of such disability is reasonably attributable to his accidental injury on May 25, 1970, and 20% thereof is due to a pre-existing disease and/or disability ...."

The Commission went on to state:

"Technically the claimant is permanently totally disabled. However, *a progressive condition subsequent to the accidental injury is making the claimant permanently totally disabled, i.e.,* arteriosclerotic cerebrovascular disease. This case differs from the Rhyhardt (sic) case (Maryland Appellate Report, Vol. 12 page 649) as in this case the condition was not aggravated, accerbated (sic)

---

1. The original "Award of Compensation", passed on August 5, 1970, determined that Thomas had sustained an accidental injury arising out of his employment and was entitled to temporary total disability benefits.

2. Md. Ann. Code art. 101, § 36 (4).

nor precipitated by the accidental injury." (Emphasis supplied).

Thomas, asserting that the findings of the Commission were inconsistent, requested a rehearing. He argued that if he were "technically . . . permanently totally disabled", the award patently should have been for a 100% industrial loss of use of the body and not just 60% as found by the Commission. The Commission, obviously unmoved by that argument, affirmed its previous order. Thomas then appealed to the Circuit Court for Baltimore County, assigning as his reason that the award of the Commission should be reversed, the same contentions he made at the rehearing before the Commission.

After his appeal to the Circuit Court for Baltimore County had been perfected, Thomas moved for summary judgment on the ground that there was no genuine dispute as to any material fact, and that he was entitled to judgment as a matter of law. Md. Rule 610. The court denied the motion on the basis that the date for determining the prior impairment of the claimant "was the date of the injury and not the date of the hearing before the Commission." Thereafter, the matter was heard *de novo*, apparently on the record made before the Workmen's Compensation Commission, before a different judge. The court affirmed the Commission, stating:

"... [Thomas] is not entitled, under Section 66 [Md. Ann. Code art. 101] dealing with 'permanent disability due to combined effects of impairment, and subsequent injury', to an award from the 'Subsequent Injury Fund' based on disability due to 'impairment' of 80 per cent as of the date of the hearing before the Commission, when the evidence proves that the claimant's disability due to 'impairment' as of the date of the industrial accident was 40 per cent only."

It is readily apparent that the court and the Commission were of the opinion that the "impairment" referred to in Md. Ann. Code art. 101, § 66 (1) is to be calculated as of the date

of the subsequent accidental injury. Section 66 (1) reads in pertinent part:

"§ 66. Subsequent Injury Fund.

(1) *Permanent disability or death due to combined effects of impairment and subsequent injury; reimbursement for supplemental allowance payments made under § 36.* — Whenever an employee who has a permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment, incurs subsequent disability by reason of a personal injury, for which compensation is required by this article resulting in permanent partial or permanent total disability that is substantially greater by reason of the combined effects of the impairment and subsequent injury than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall be liable only for the compensation payable under this article for such injury. However, in addition to such compensation to which the employer or his insurance carrier is liable, and after the completion of payments therefor provided by this article, the employee shall be entitled to receive and shall be paid additional compensation from a special fund to be known as the 'Subsequent Injury Fund' created for such purpose, in the manner described hereafter in this section, it being the intent of this section to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and subsequent injury resulting in permanent total disability or a substantially greater permanent partial disability.

Benefits from the Subsequent Injury Fund hereunder shall not be payable unless the combined effects resulting from a previous impairment and a

subsequent accidental injury result in a permanent disability exceeding 50 per centum (50%) of the body as a whole."

We have stated that the purpose of § 66 (1) is to dissuade employers from refusing to hire handicapped individuals. In order to accomplish that purpose the section limits the liability of the employer in the event that a previously handicapped employee sustains a subsequent occupational injury which though not of itself disabling, nevertheless, when coupled with the prior impairment, renders the employee permanently disabled, "thus exposing the employer to liability for the cumulative effect of the prior and subsequent injuries." *Subsequent Injury Fund v. Pack*, 250 Md. 306, 242 A. 2d 506 (1968). Under the provisions of § 66 (1) the employer is liable only for compensation payable to the employee as the result of the subsequent injury, and "the Fund [is] obligated to pay the rest." *Subsequent Injury Fund v. Chapman*, 11 Md. App. 369, 372, n. 2, 274 A. 2d 870 (1971), *aff'd mem.*, 262 Md. 367, 277 A. 2d 444 (1971). *See also Dent v. Cahill*, 18 Md. App. 117, 305 A. 2d 233 (1973).

The Fund suggests that the Maryland statute is "similar" to that of the State of Florida. The Florida law, Fla. Stat., Workmen's Compensation Law, § 440.49 (4) (b) (1973), provides:

"As used in this subsection, permanent physical impairment means any permanent condition due to previous accident or disease or any congenital condition which is or is likely to be a hindrance or obstacle to employment and which was known to the employer prior to the occurrence of the subsequent injury or occupational disease."

The Florida statute makes it manifest that the impairment must be "known to the employer" prior to employment. Maryland, however, has no such employer knowledge provision in its Workmen's Compensation Act, and we do not think this Court should, by judicial fiat, amend § 66 (1) by appending thereto words of qualification

similar to those appearing in the Florida law.[3] The proper "judicial function is that of interpretation; it does not include the power of amendment under the guise of interpretation." *West Coast Hotel Co. v. Parrish,* 300 U. S. 379, 57 S. Ct. 578, 81 L. Ed. 703 (1937).[4] If the Fund desires amendment of the statute, it should seek that amendment through the legislative process and not through the courts.

In *Subsequent Inj. Fund v. Rinehart,* 12 Md. App. 649, 280 A. 2d 298 (1971) we considered the application of § 66 (1) to an employee who sustained a head injury and who died within a ten month span from "a malignant brain tumor." The Fund argued "that there was no pre-existing impairment of which the decedent or anyone else was *aware* at the time, and that the decedent had not experienced, *before the injury,* any hindrance to his employment, and reason[ed] that the disease was not one contemplated under § 66 (1)."

Judge Powers, speaking for this Court said:

"... [T]he trial judge was correct in ruling, ... that as a matter of law the decedent, at the time of the injury, had a permanent impairment due to disease which was likely to be a hindrance to his employment, and his death was due in part to that impairment."

After noting that § 66 (1) is directed toward a "somewhat different social and economic public policy" than § 36 (7), Judge Powers stated:

"... When an employee sustains an acciden-tal injury in the course of his employment, and

---

**3.** One state, New York, has followed the approach suggested by the Fund, and has read into its second injury statute a requirement of employer knowledge. Zyla v. A.D. Juilliard & Co., 277 App. Div. 604, 102 N.Y.S.2d 255 (1951). This approach has been subjected to scholarly criticism. Professor Larson notes in his treatise that the employer knowledge requirement was "engrafted upon the statute by judicial construction," and states that a "reason for disapproving the New York rule is that ... it involves one of those distinctions that consume far more litigation time and cost than the policy at stake is worth." A. Larson, *The Law of Workmen's Compensation,* § 59.33 (1974).

**4.** Dissenting opinion by Mr. Justice Sutherland.

such injury, combining with a pre-existing 'permanent impairment due to previous accident or disease or any congenital condition, which is or is likely to be a hindrance or obstacle to his employment', contributes to his death, or contributes to a disability which is greater than 50% of the body as a whole, it is the declared intent of § 66 (1) 'to make the total payments to which such employee shall become entitled equal to the compensation that would be due for the combined effects of the impairment and the subsequent injury.' "

The Fund in the instant case, while stating that it does not desire an overruling of *Rinehart, supra,* nevertheless seeks that result. If we were to follow the reasoning of the Fund, the Commission and the trial court, we would have to hold that § 66 (1) is to be applied in a restrictive and narrow manner. But, as we said in *Board of Co. Comm'rs. v. Fleming,* 13 Md. App. 261, 282 A. 2d 512 (1971), "The Workmen's Compensation Act is to be as liberally construed in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. . . ." *See Bethlehem-Sparrows Point Shipyard v. Hempfield,* 206 Md. 589, 112 A. 2d 488 (1955).

The Fund asks us to read § 66 (1) to mean that only that degree of prior impairment existing at the moment that the subsequent accidental injury occurs, may be considered in apportioning an award under § 66 (1). If that were the case, the *Rinehart* decision would have been different. There the fact finder would have had to determine what, if any, industrial impairment Rinehart had prior to the time he fell and hurt his head. The answer to that question would be that there was no measurable degree of impairment because while the claimant had a malignant brain tumor, it was not evident. As we read § 66 (1) and *Rinehart, supra,* it is immaterial whether the "previous accident or disease or . . . congenital condition" was apparent at the time of the accidental injury. The Maryland law is that the employee is entitled to receive from his employer or its insurance carrier

that percentage of disability, if any, resulting directly from the accident, and he is further entitled to receive from the Fund that percentage of disability representing the combined effect of the accidental injury and any "impairment due to previous accident or disease or any congenital condition", less the percentage of disability arising from the current accidental injury.

We observe nothing within the ambit of § 66 (1) which narrows the scope of that social remedial legislation to the confines sought by the Fund. We expressly reaffirm the holding of *Rinehart.*

There was, of course, evidence before the trial court which would entitle the court to conclude that Thomas had a permanent partial disability of 60% of his body, notwithstanding the Commission's statement that Thomas was "[t]echnically permanently totally disabled." [5]

As we said in *Dent v. Cahill, supra* at 127:

> "Under the provisions of Md. Ann. Code art. 101, § 36 (1) (a) the Commission, as the original fact finder, is required to determine permanent total disability upon the facts of each particular case. On appeal to the trial court, the court in a non-jury trial, or the jury if there be a jury trial, may disagree with the Commission's interpretation of the facts and arrive at a different conclusion, *Richard F. Kline, Inc. v. Grosh,* [245 Md. 236, 226 A. 2d 147 (1967)] subject to the caveat that the decisions of the Commission are *prima facie* correct, Md. Ann. Code art. 101, § 56 (c)."

Our review of the record in the instant case indicates that the trial judge predicated his decision upon a finding of that degree of impairment existing at the time of the subsequent injury. The rule is that the disability resulting from the combination of the previous impairment and the subsequent injury is to be evaluated as of the time the claimant attains

---

5. It is difficult to understand how Thomas can be both 60% permanently partially disabled and "technically permanently totally disabled" simultaneously.

maximum improvement of the subsequent injury. We reverse the decision of the trial court and remand with instructions that it, on the evidence before it, determine Thomas's disability in the light of this opinion.

The County advised us on oral argument that it accepts liability for the payment of 40% permanent partial disability "under Other Cases" and expresses no opinion as to the propriety, *vel non*, of the Fund's position.

> *Judgment reversed; case remanded for further proceedings not inconsistent with this opinion.*
> *Costs to be paid by Subsequent Injury Fund.*