497 P.2d 1048

Ruth MADRON, Claimant-Appellant,

v.

GREEN GIANT COMPANY, and Employers Mutual Liability Insurance Company of Wisconsin, Defendants-Respondents.

No. 10982.

Supreme Court of Idaho.

June 7, 1972.

748

———◆———

Rayborn, Rayborn, Webb & Pike, Twin Falls, for claimant-appellant.

Elam, Burke, Jeppesen, Evans & Boyd, Boise, for defendants-respondents.

BAKES, Justice.

This appeal was generated by an allegedly inadequate compensation award by the Industrial Accident Board to Mrs. Ruth Madron, appellant herein, arising out of a September 10, 1963, accident which occurred during the course of her employment with the Green Giant Company, respondent herein. Following the accident, Employers Mutual Liability Insurance Co. of Wisconsin, surety-respondent, paid appellant's medical expenses ($793.50) and reimbursed her for disability from work ($1,069.65). At the hearings, the board approved these previously made payments and further ordered compensation to appellant for partial permanent disability for a period of 9 weeks at $30.00 per week (a total of $270). Appellant, claiming that an osteoarthritic hip condition either resulted from or was precipitated by the accident, appeals from that award seeking additional permanent disability compensation.

The circumstances of the accident are not in dispute. Appellant was working the night shift during the corn canning season at Green Giant. At the time of the accident, she was working along a conveyor belt inspecting corn. Appellant stepped back and apparently slipped on a pile of wet corn cobs or shucks. In an attempt to break her fall, appellant twisted severely and endeavored to grasp a beam. She missed the first beam, but caught a lower one and then fell to the floor.

Appellant initially complained primarily of injuries to her shoulders and back. The damage to appellant's hip was not pinpointed until July, 1965, almost two years after the accident, when Dr. Shaw denominated her condition as "moderately advanced osteoarthritis of the right hip." By 1967, appellant's hip had degenerated to the point that she could hardly move and was in constant pain. While visiting a daughter in Denver, appellant received operative care, having an artificial (Smith-Peterson) cup implanted in her right hip joint. Although her condition has improved, appellant is still largely immobile and apparently unable to secure gainful employment.

At the conclusion of a series of three hearings at which both the testimony and the depositions of numerous doctors were received, the board determined that the hip condition was not related to the accident, but allowed her a 5% permanent disability as compared to the loss of the leg at the hip for the trauma which appellant had suffered in her fall. The board allowed appellant no compensation for her disabling hip condition. In its findings, the board detailed the testimony of many of the doctors and, in an ultimate finding of fact based on Dr. Shaw's testimony, arrived at the 5% disability figure. From that award, specifically from the denial of any compensation for her hip condition, appellant has appealed, advancing two main assignments of error: (1) The board erred in basing its award primarily on the testimony of Dr. M. B. Shaw, said testimony being incompetent because it was allegedly founded on an incorrect medical history. (2) The board erred in arbitrarily rejecting or ignoring competent testimony presented at the hearing—i.e., the testimo-

ny of appellant's personal physician, Dr. Willard Clark. Appellant's assignments of error notwithstanding, we are constrained to affirm the board's award.

In workmen's compensation cases, it is well established that the claimant has the burden of proving, by a preponderance of the evidence, all the facts essential to a recovery. *E. g.,* Wilson v. Carl Gilb, Inc., 94 Idaho 106, 482 P.2d 81 (1971); W. Schneider, 12 Workmen's Compensation Text, p. 279 (1959). As stated in Tipton v. Jansson, 91 Idaho 904, 907, 435 P.2d 244, 247 (1967):

> "Workmen's compensation for personal injury or death will be granted only if it be shown that an industrial accident has caused the affliction. Appellant had the burden of proving both elements, the accident and its causation of the injury."

*Accord:* In re Brown's Death, 84 Idaho 432, 373 P.2d 332 (1962). It is implicit in the board's award that appellant failed to meet her burden in establishing a causal connection between the accident and her hip condition.

In reviewing an Industrial Accident Board ruling on appeal, this court is controlled by well settled principles. In workmen's compensation appeals this court is limited in its study to questions of law. Idaho Constitution, Art. V, § 9. I.C. §§ 72–608, 72–609 (repealed effective January 1, 1972). *E.g.,* Wilson v. Carl Gilb, Inc., *supra*; Bennett v. Bunker Hill Co., 88 Idaho 300, 399 P.2d 270 (1965). When, as in the case at bar, factual findings of the board are challenged on appeal, our investigation is restricted to a determination of whether the findings are supported by substantial and competent evidence. Duerock v. Acarregui, 87 Idaho 24, 390 P.2d 55 (1964); Walker v. Hogue, 67 Idaho 484, 185 P.2d 708 (1947). Findings of fact of the board will be sustained on appeal if supported by substantial competent evidence. *E.g.,* Kern v. Shark, 94 Idaho 69,

480 P.2d 915 (1971); Johnson v. Boise Cascade Corp., 93 Idaho 107, 456 P.2d 751 (1969).

With these relevant principles in mind, it is our task to respond to appellant's arguments. Appellant's first contention can be capsulized as follows: The board relied heavily on Dr. Shaw's testimony in its implied conclusion that the accident had no causative effect on appellant's current hip condition. Appellant suggests that Dr. Shaw based this conclusion on the assumption that appellant suffered no pain at a time in close propinquity with the accident. Appellant notes, however, that she did experience such pain shortly after the accident and reported this fact to Drs. Woodson and Burkholder, both of whom examined her within six months of the accident. Therefore, appellant asserts that Dr. Shaw's conclusion that there is no causative link between the hip condition and the accident is erroneous due to his inaccurate medical history. Appellant then attempts to elicit from Dr. Shaw's testimony an absolute medical rule that if appellant suffered hip-related pain immediately after the accident this factor would establish a causal connection between appellant's hip condition and the accident.

Appellant's argument is not persuasive. First of all, the evidence of hip-related pain shortly after the accident referred to by appellant is equivocal. In reports from a November 18, 1963, examination of appellant, Dr. William Woodson, an orthopedic surgeon, noted that appellant "experienced pain all over her back, but especially in the lower portion, extending through the pelvis to the right groin." Defendant's Exhibit # 1. The bulk of Dr. Woodson's report, however, deals with appellant's subjective complaints concerning her inexplicable back pains. In summarizing his examination, Dr. Woodson stated: "I feel it unlikely that there is any permanent partial disability due to the [back] injury as described by the patient." Like Dr. Woodson, Dr. M. M. Burkholder, who

examined appellant in April of 1964, mentioned appellant's hip-related pain in his medical report. In that report it is stated, "Originally the pain radiated around both groins." This, however, is the sole reference made by Dr. Burkholder to any early hip-oriented pain. The only impressions of appellant noted by the doctor include: "(1) Obesity; (2) Post-traumatic back strain; (3) Monosensory neuritis of the distal branch of the ulnar nerve to the little finger." Defendant's Exhibit #2.

Even if this meager evidence of early hip pain was accepted by the board, it does not necessarily follow that Dr. Shaw's testimony is discredited nor is it certain that the accident was causative of the hip arthritis. When questioned about the likelihood of the accident causing the hip injury if evidence of immediate hip pain were established, Dr. Shaw refused to conclude that the hip arthritis was caused or triggered by the accident. During the taking of his deposition, Dr. Shaw was asked:

"If you have a person like Mrs. Madron who, prior to September 10th, 1963, was able to work and was fully functional and had no complaints either with her back or with her hips and who after this accident of September 10th, 1963, had had a series of continuous complaints, including among those the complaint of pain in the groin, pelvis area, wouldn't this be some indication that the accident of September 10th, 1963, was at least a triggering effect on setting off the problem with her right hip?"

In response, Dr. Shaw stated:

"No, sir, I don't feel that way at all. I think she has an osteoarthritis of the hip due to the congenital dysplasia [i.e., abnormality] and that the accident really has no significant relationship to it." Board's Exhibit #7, Shaw Depos., pp. 19–20.

In addition, we find among the testimony of the other doctors adequate evidence on which the board could rely in denying appellant compensation for hip arthritis. For example, in a deposition taken from Dr. John Joshua, who implanted the artificial hip for appellant, the doctor testifies throughout that the osteoarthritis could not be attributed to any single traumatic incident and that any attempt to blame the 1963 industrial accident as the cause of appellant's hip ailment would be purely conjectural. Dr. Joshua's views are summarized in the following statement from his deposition: "The profession [medical] in general does not know enough about uniarthroidal,—that is, single joint arthritis—to blame with certainty one particular traumatic incident. And, in particular, one for which there is only minimal sequential evidence for trauma."

■ Finally, it appears to us that appellant's steadfast reliance on the alleged fact that she suffered serious hip-related pain immediately and continuously after the accident is misplaced. In other words, merely because appellant may have suffered hip or groin pain shortly after the accident does not conclusively establish that the accident in fact caused appellant's hip condition. As stated by Dr. Joshua, "I would like to make it very clear that groin pain is also very pathognomonic, an important finding in bladder disease, kidney disease, urinary stones, herniated discs, and general pathology at the level of L/4 and L/5 and local problems such as hernias . . . ."

In summary then, the disposition of this issue boils down to the fact that appellant had the burden of proving that the hip ailment was caused or triggered by the 1963 industrial accident. The board determined that she failed to meet this burden. In our review we find ample competent evidence to sustain the board's position.

■ Appellant's second assignment of error raises the issue of whether the board erroneously ignored competent testimony —that of the appellant's personal physician, Dr. Willard Clark—when it did not

mention such testimony in its findings of fact. Appellant correctly recognizes that the board, although detailing the reports and testimony of most of the doctors, did not mention or explain Dr. Clark's testimony, specifically that portion which appellant contends establishes that the accident was causative of the hip ailment. We herein recognize, and adhere to the rule cited by appellant that the board cannot arbitrarily reject or ignore competent evidence in making its determinations. 3 Larson's Workmen's Compensation Law, § 80.20, pp. 278–80, 1971. *See* Cook v. Georgia Dept. of Revenue, 100 Ga.App. 172, 110 S.E.2d 552 (1959). The board must weigh all the competent evidence and make its findings according to its assessment of the preponderance of that evidence. 3 Larson's, *supra*, § 80.20. We do not find, however, that the board's failure to mention Dr. Clark's testimony in its findings of facts necessarily indicates that it ignored his testimony in weighing the evidence. We concede that findings of fact which detail all competent evidence and/or state explicitly that all findings are based on the board's view of a preponderance of all substantial and competent evidence would facilitate our review on appeal. We find, however, no absolute rule which requires the board to make detailed findings on every fragment of evidence presented to it. The only requirement in this regard is that the board make findings of fact sufficient to support its award and which will enable this court on appeal to assess the propriety of that award in light of such findings. 3 Larson's, *supra*, at § 80.13, pp. 260–63. *See* Beard v. Post Co., 82 Idaho 38, 348 P.2d 939 (1960); Stroscheim v. Shay, 63 Idaho 360, 120 P.2d 267 (1941). We conclude that the board in the case at bar has satisfied this requirement.

Award affirmed. Costs to respondent.

McQUADE, C. J., McFADDEN and DONALDSON, JJ., and OLIVER, District Judge, concur.