EMPLOYERS COMMERCIAL UNION IN-
SURANCE GROUP, a foreign corporation,
and the State of Alaska, Appellants,

v.

James CHRIST, and the Alaska Workmen's
Compensation Board, Appellees.

No. 1576.

Supreme Court of Alaska.

Sept. 12, 1973.

Charles Hagans, Keith E. Brown, An-
chorage, for appellants.

Martin A. Farrell, Jr., of Hahn, Jewell
& Farrell, Anchorage, for James Christ.

John E. Havelock, Atty. Gen., Juneau,
Charles K. Cranston, Asst. Atty. Gen., An-
chorage, for appellee, Alaska Workmen's
Compensation Bd.

Before RABINOWITZ, C. J., and
CONNOR, ERWIN and BOOCHEVER,
JJ.

CONNOR, Justice.

This is a workmen's compensation case
in which we are called upon to interpret
the statutes pertaining to the second injury
fund. The question is whether the absence
of an arm is such a pre-existing physical
impairment as to entitle the employer, as a
matter of law, to reimbursement from the
fund.

James Christ lost his arm by amputation
in 1937 when he was 20-years old. In 1961
he commenced his employment with the
State of Alaska, Division of Lands. On
October 12, 1968, while so employed, he
was injured in a motor vehicle accident,
suffering lacerations of the head and face,
and fractures of the vertebral bodies of the
dorsal-lumbar spine. Christ's treating phy-
sician later testified that the absence of the
left arm combined with the back injury to
produce a permanent, partial impairment
which he estimated at 50% to 60% of the
whole man.

The evidence presented at the hearing
before the Alaska Workmen's Compensa-
tion Board shows that for most of his
adult life, Christ's primary type of work

was constructing buildings, running road makers, and operating dump trucks. He had no difficulty obtaining employment. During his eight years of employment with the Division of Lands, Christ did park maintenance work, warehouse work, operated various types of machinery, and did other construction work such as prefabrication, building fireplaces, and pouring cement. In the summers, he worked in the field and operated heavy equipment. He had taken a physical examination prior to his employment with the Division of Lands. According to his supervisor, Christ, before the injury, was adept at operating heavy equipment, and was capable of performing all field and shop duties with only one arm. He performed better than some employees with two arms.

None of Christ's initial employment papers indicate that he had lost an arm. The first written acknowledgment of the existence of Christ's handicap, the loss of an arm, was in a personnel evaluation report dated December 13, 1966, and this report noted that the loss of arm did not slow his work.

The board found Christ to be permanently and totally disabled by the 1968 injury and awarded compensation on that basis. In its decision, the Alaska Workmen's Compensation Board observed that the loss of an arm did not prevent Christ from being gainfully employed nor was it of such seriousness as to constitute a hindrance to his obtaining employment. As a result, the board concluded that the employer, the State of Alaska, was not entitled to reimbursement from the second injury fund. The State's insurance carrier appealed to the Superior Court, which affirmed the order of the board. The insurance carrier seeks a final determination from this court.

Our Workmen's Compensation Law, AS 23.30.205, provides a system of reimbursement to the employer of a handicapped person, where that person receives a second injury. The following provisions of AS 23.30.205 are pertinent to this appeal:

"(a) If an employee who has a permanent physical impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment resulting in compensation liability for disability that is substantially greater by reason of the combined effects of the preexisting impairment and subsequent injury or by reason of the aggravation of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or his insurance carrier shall in the first instance pay all awards of compensation provided by this chapter, but the employer or his insurance carrier shall be reimbursed from the second injury fund for all compensation payments subsequent to those payable for the first 104 weeks of disability.

. . . . . .

"(C) In order to qualify under this section for reimbursement from the second injury fund, the employer must establish by written records that the employer had knowledge of the permanent physical impairment before the subsequent injury and that the employee was hired or retained in employment after the employer acquired that knowledge.

"(d) As used in this section, 'permanent physical impairment' means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed. No condition may be considered a 'permanent physical impairment' unless

(1) it is one of the following conditions:

(A) epilepsy,

(B) diabetes,

(C) cardiac disease,

(D) arthritis,

(E) amputated foot, leg, arm or hand,

(F) loss of sight of one or both eyes or a partial loss of uncorrected vi-

sion of more than 75 per cent bilaterally,

(G) residual disability from poliomyelitis,

(H) cerebral palsy,

(I) multiple sclerosis,

(J) Parkinson's disease,

(K) cerebral vascular accident,

(L) tuberculosis,

(M) silicosis,

(N) hemophilia,

(O) chronic osteomyelitis,

(P) osteoporosis,

(Q) ankylosis of joints,

(R) hyperinsulinism,

(S) muscular dystrophies,

(T) arteriosclerosis,

(U) thrombophlebitis,

(V) varicose veins,

(W) heavy metal poisoning,

(X) ionizing radiation injury,

(Y) compressed air sequelae,

(Z) ruptured intervertebral disk,

(AA) spondylolisthesis, or

(2) it would support a rating of disability of 200 weeks or more if evaluated according to standards applied in compensation claims."

 The insurance carrier qualifies generally for reimbursement under the terms of the statute. Although the initial employment records contained no statement about Christ's handicap, a report written prior to his second injury did contain a statement that he was missing an arm. Thus, the employer has satisfied the statutory requirement that Christ was retained in employment after knowledge of the handicap, established by written record. AS 23.30.205(c).

The only question to be resolved is whether Christ's lack of an arm is "of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if [he] should become unemployed." AS 23.30.-205(d). The carrier argues that an amputated arm is such a hindrance as a matter of law; to hold otherwise is to defeat the purpose of the second injury fund. Appel-

lees argue that because Christ's prior impairment did not affect his ability to obtain employment and to remain employed, there was not in fact an impairment serious enough to qualify as a hindrance or obstacle to employment under the concept expressed in the statute.

The law in other jurisdictions is not uniform on this question. Some states have statutes cast in rather general terms, leaving wide scope for judicial decision on the applicability of the second injury fund. Others have statutes carefully and specifically drawn, leaving fewer doubtful cases for decision.

In some states the courts require a showing, before the second injury fund comes into play, that the prior disability actually affected the earning power or job performance of the particular claimant. In other words, the prior disability must be specifically disabling to the particular claimant. See, e. g. Rikala v. Rundquist Construction Co., 247 Minn. 401, 77 N.W. 2d 551 (1956); Meilves v. Morris, 422 S. W.2d 335 (Mo.1968). Most of these holdings are under general statutes, unlike the Alaska provision. Many of the cases concern an employee in general ill health who suffers an injury which produces catastrophic results.

New York has a statute similar in part to ours. In defining the type of previous disability which brings the subsequent injury fund into play it includes, "[A]ny permanent condition due to previous accident or disease or any congenital condition which is or is likely to be a hindrance or obstacle to employment." 64 McKinney's Consolidated Laws of New York, § 15(8)(b).

In interpreting this language, one court commented:

"The question is not whether the impairment is one which would prevent the claimant from doing his work in a normal and acceptable manner but whether the impairment is one which is likely to be an adverse factor in the claimant's being employed or being retained in em-

ployment. Many handicapped persons are, in fact, able to do their work as well as those free from handicap but there may be a greater risk of injury to them or there may be a risk that, in the event of injury, their total permanent disability will be greater than the disability which would have resulted from the subsequent injury alone." Nagorka v. Goldstein, 4 A.D.2d 904, 167 N.Y.S.2d 118, 119 (1957).

In DeDominic v. Joseph Schlitz Brewing Company, 30 A.D.2d 578, 289 N.Y.S.2d 689, 691 (1968), the court further clarified its position by stating, "the issue is not whether the pre-existing condition is an obstacle or likely to become a handicap to the particular job, but rather whether it is a hindrance to or limits his employability generally."

In interpreting the Alaska statute we must keep in mind the policy underlying second injury fund systems. It is recognized that a person, even though physically handicapped by injury or disease, should be given the opportunity to be self-supporting, thereby maintaining his independence and self-respect. One method of removing obstacles to the employment of the partially disabled is through a second injury fund. By making a logical and equitable adjustment of the liability assumed by the employer in hiring a handicapped person, the second injury fund removes or at least decreases one barrier to employment. Alaska Workmen's Comp. Bd. v. H. & M. Logging Co., 492 P.2d 98, 100 (Alaska 1971).

In its enactment the legislature has said, in effect, that an employer should not be liable for, or pay premiums for, certain pre-existing disabilities. Under AS 23.30.-205(a) the extent of the employer's liability is spelled out with clarity. The statutory schedule lists some twenty-seven conditions, plus a general category, which would normally be a detriment to the employability of the average workman. We view this as a legislative attempt to set up a relatively precise, objective measure of second injury fund participation.

We think that by using a specific schedule of conditions which call for second injury fund payments the legislature intended to avoid the very type of litigation presented in this case. Nothing in the statute implies that there must be a case-by-case determination of the amount of hindrance to employment which flows from any scheduled pre-existing condition. If such an implication were to be drawn, it could seriously impede the functioning of the statutory scheme. If the statute is simply applied according to its terms, then employers and their insurance carriers may compute their potential liability, and the premiums to be paid for insurance coverage, in reliance on the statute. But if each case requires a finding that a scheduled condition had a particular detrimental effect on the employability of a given workman, then reliance on the statute is greatly diminished. The litigative uncertainties might well be reflected in higher insurance premiums, thereby defeating the underlying purpose of the act, which is to minimize the cost difference between employing handicapped persons and employing others.

In our opinion the legislative purpose will be best served by applying the statute according to its plain meaning. This course has the advantage of avoiding subtle inquiries into the degree by which a particular pre-existing impairment affected the employability of a given workman. Such questions might otherwise become a fruitful source of litigation before the board, calling for findings as to employer attitudes and beliefs, as well as for evaluations of the employee's job performance.

It is argued that because the employee in this case was fully able to discharge his duties there is no practical reason to permit resort to the fund. But the statutory language provides the refutation. That language covers not only those physical impairments likely to be a hindrance or obstacle to obtaining employment, but also those which might be a hindrance in "obtaining reemployment if the employee should become unemployed." AS 23.30.-205(d). Thus, even though Christ had no

difficulty keeping his job with the Division of Lands, he might well have had difficulty finding another job in the event that he became unemployed.

We hold, therefore, that when the objective terms of AS 23.30.205 are met, there is a permanent physical impairment as a matter of law. Under AS 23.30.-205(a) it is necessary that the combined effects of the earlier impairment and the later injury produce a disability substantially greater than that which would have resulted from the subsequent injury alone. Accordingly, we reverse and remand for further proceedings in accordance with this opinion. On remand the board shall determine whether the pre-existing impairment combined with the later injury to produce a disability substantially greater than that which would have resulted from the subsequent injury alone.

Reversed and remanded.