630 P.2d 148

Lawrence GUGELMAN,
Claimant-Respondent,

v.

PRESSURE TREATED TIMBER CO., Employer, and Industrial Indemnity Company, Surety, Defendants-Appellants,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant-Respondent.

No. 13358.

Supreme Court of Idaho.

June 12, 1981.

Joseph D. McCollum and Karen L. Lansing of Hawley, Troxell, Ennis & Hawley, Boise, for defendants-appellants.

Peter J. Boyd of Elam, Burke, Jeppesen, Evans & Boyd, Boise, for claimant-respondent.

Max M. Sheils, Jr. of Ellis, Brown & Sheils, Boise, for defendant-respondent.

BISTLINE, Justice.

The employer, Pressure Treated Timber Co., and its surety, Industrial Indemnity Co., appeal a decision by the Industrial Commission that the respondent Industrial Special Indemnity Fund (I.S.I.F.) is not liable for any part of claimant Gugelman's disability compensation. Claimant takes no part in this appeal as his total disability is not questioned.

On October 2, 1975, claimant was unloading poles from a truck in the course of his employment when he was hit in the chest by a pole and fell 8 to 10 feet to the ground. He suffered low back pain and face lacerations. Although claimant returned to work, the pain in his back grew progressively worse and he began having blackouts until he was forced to quit his employment on October 19, 1977. He has not been employed since that time. That he became and now is totally disabled is not contested.

The major controversy in this case is whether claimant's injuries prior to the October 2, 1975, accident constituted a pre-existing "permanent physical impairment" under I.C. § 72–332(2) such that the I.S.I.F. is liable for a portion of the disability compensation payments. Claimant's first injury occurred in September 1961. At that time claimant was engaged in heavy farm labor and a tractor fell on him, causing a severe fracture of his pelvis and right femur. He was hospitalized for seven months, returning to work several months thereafter as a truck driver.

Claimant worked as a truck driver hauling flour from approximately 1962 until 1970. This job entailed loading and unloading sacks of flour weighing up to 100 pounds, and claimant testified that he had no difficulty performing these duties.

From 1970 to 1973, claimant owned and drove one truck in Montana. Claimant returned to Idaho in 1973, again working as a truck driver. He had to load and unload lumber, steel axles, toilets and ranges in connection with this job. In July 1974, while working on a truck, claimant was struck in the right hip when the transmission slipped. He was hospitalized for fourteen days, had a complete hip replacement, and spent two to three months convalescing.

Claimant was then employed by appellant Pressure Treated Timber Co. as a truck driver. His duties entailed hauling utility poles or fencing materials to and from Colorado, Oregon and California. Claimant testified that he still experienced no pain in his back or hip and that he had no difficulty working. He also testified that he did not require the services of a physician except as a follow-up to his former hip surgery. The October 2, 1975, accident occurred while claimant was working for Pressure Treated Timber Co.

In spite of claimant's testimony that he had suffered no back pain prior to 1975, claimant's physician, Dr. Wolff, testified that claimant had come to him prior to 1975 complaining of low back pain. Pursuant to a request by the insurance company, a medical panel was formed to examine claimant in connection with this case. The testimony of the members of the panel indicated that, due to the pre-1975 injuries, claimant walked with a slight limp; had residual contraction of his hip muscles; suffered mild degenerative mid-lumbar arthritis; had no motion between the pelvis and the fourth lumbar vertebrae due to a fusion; and had a fusion of his sacroiliac joints and his symphysis pupis. The panel felt that 10% of claimant's impairment was due to the 1975 accident, with 90% being due to his pre-existing condition. The panel felt that claimant should not have been doing heavy labor, that it was only a matter of time before problems would have arisen because of his pre-existing condition, and

that it was unquestionable that the 1975 accident aggravated the pre-existing condition. The panel described the pre-existing condition as "the permanent partial impairment that most certainly existed prior to this injury."

Dr. Wolff, although he initially agreed with the panel's apportionment, subsequently fixed claimant's condition as 50% due to the 1975 accident and 50% attributable to the pre-existing condition. He based his second apportionment on the fact that claimant was doing hard physical labor before 1975. Dr. Wolff also testified that the pre-1975 injuries would eventually have led to total incapacity regardless of the 1975 accident.

The Commission found that 50% of claimant's current disability was attributable to the October 2, 1975, accident, with 50% being attributable "to a preexisting condition which did not constitute, subjectively, a hindrance or obstacle to Claimant's employment prior to October 2, 1975." The Commission stated that its decision that the pre-existing condition was not a hindrance or obstacle to employment was based solely on claimant's testimony. In so holding, the Commission stated that "[i]t has always been the position of the Industrial Commission that the test to be applied to determine whether or not a pre-existing condition constituted a hindrance or obstacle to employment was a subjective one, i. e., whether or not the pre-existing condition constituted a hindrance or obstacle to employment for the particular injured worker involved." The Commission then held that the I.S.I.F. was not liable for any part of claimant's total disability payments.

■ The first issue presented is whether a claimant's pre-existing condition must have *actually* hindered his efforts to obtain employment in the past in order to constitute a pre-existing "permanent physical impairment." I.C. § 72–332(2), as worded at the time claimant's claim was before the Commission, provided:

"As used in this law, 'permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed."

On appeal the parties advise us that the entire section was amended in 1978.[1] Subsection (2) was deleted. The section as amended contained only this language:

"If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the preexisting impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the preexisting impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the industrial special indemnity fund."

It is thus reasonably arguable that the legislature in amending the statute intended to eliminate from consideration the hindrance to employment aspect in defining permanent physical impairment. As readily seen, the version of the statute which is our concern (pre-1978), on its face does not define "permanent physical impairment" as a condition which *has been* a hindrance to obtaining employment. Indeed, such a reading would make the last part of the sentence, "or to obtaining reemployment if the employee should become unemployed," totally meaningless. This phrase obviously contemplates I.S.I.F. liability where the pre-existing condition is such that it reason-

---

1. We are aware that the legislature in 1981 has again amended § 72–332. Since that amendment occurred after oral arguments in this case, we decline to consider its meaning.

ably could be expected to affect future attempts to obtain employment, but where that exact situation did not arise and has not arisen. The test apparently suggested is that the worker might well be expected to encounter difficulty finding another job in the event that he did become unemployed. Without this phrase, the statute could possibly be read as covering *actual* experiences in obtaining employment; with it, however, the intent obviously is to define "permanent physical impairment" as based on the effect the condition is likely or reasonably anticipated to have on obtaining employment. This reading also prevents I.S.I.F. liability from being premised on the fortuity of a claimant's good or bad luck in obtaining employment.

The Alaska Supreme Court was confronted with this same proposition in *Employers Commercial Union Insurance Group v. Christ*, 513 P.2d 1090, 1093–94 (Alaska 1973). That court read their statute[2] as we read ours:

"It is argued that because the employee in this case was fully able to discharge his duties there is no practical reason to permit resort to the fund. But the statutory language provides the refutation. That language covers not only those physical impairments likely to be a hindrance or obstacle to obtaining employment, but also those which might be a hindrance in

'obtaining reemployment if the employee should become unemployed.' AS 23.30.–205(d). Thus, even though Christ had no difficulty keeping his job with the Division of Lands, he might well have had difficulty finding another job in the event that he became unemployed." *Id.* at 1093–94.

This reading is also consistent with the purposes of the I.S.I.F. We discussed those purposes in *Cox v. Intermountain Lumber Co.*, 92 Idaho 197, 439 P.2d 931 (1968), as follows:

"Prior to its [the I.S.I.F.] creation, an employer who hired a handicapped worker was subject to the responsibility of paying for total permanent disability compensation to an employee rendered totally and permanently disabled because of his pre-existing handicap coupled with a subsequent industrial injury. See: *McNeil v. Panhandle Lumber Co.*, 34 Idaho 773, 203 P. 1068 (1921). The fund was established to relieve an employer of this burden. The underlying policy of the fund is to allow an employer to hire a handicapped person, with the obligation only to pay compensation for an industrial injury to the handicapped person such amount as the employer would have had to pay an employee who had not been handicapped, with the indemnity fund as-

2. The pertinent portion of the Alaska statute is as follows:

"(d) As used in this section, 'permanent physical impairment' means any permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed. No condition may be considered a 'permanent physical impairment' unless
(1) it is one of the following conditions:
(A) epilepsy,
(B) diabetes,
(C) cardiac disease,
(D) arthritis,
(E) Amputated foot, leg, arm or hand,
(F) loss of sight of one or both eyes or a partial loss of uncorrected vision of more than 75 per cent bilaterally,
(G) residual disability from poliomyelitis,
(H) cerebral palsy,
(I) multiple sclerosis,

(J) Parkinson's disease,
(K) cerebral vascular accident,
(L) tuberculosis,
(M) silicosis,
(N) hemophilia,
(O) chronic osteomyelitis,
(P) osteoporosis,
(Q) ankylosis of joints,
(R) hyperinsulinism,
(S) muscular dystrophies,
(T) arteriosclerosis,
(U) thrombophlebitis,
(V) varicose veins,
(W) heavy metal poisoning,
(X) ionizing radiation injury,
(Y) compressed air sequelae,
(Z) ruptured intervertebral disk,
(AA) spondylolisthesis, or
(2) it would support a rating of disability of 200 weeks or more if evaluated according to standards applied in compensation claims."

suming responsibility for the balance of the total permanent disability." 92 Idaho at 200, 439 P.2d at 934.

Thus it is seen that the I.S.I.F. was created both to encourage the hiring of the handicapped and, as a corollary, to relieve employers of the unfair burden of paying total permanent disability compensation when only part of the disability was due to the industrial accident. *See Jacques v. H. O. Penn Machinery Co.*, 166 Conn. 352, 349 A.2d 847, 852 (1974); 2 Larson, Workers Compensation Law § 59.33(a) at 10–484 (1980).

Applying a subjective test to determine whether the pre-existing condition was a hindrance to employment would vitiate both of these purposes. For instance, under the interpretation advanced by the I.S.I.F., if a one-armed person was hired without question, thus his previous disability not being considered as a hindrance to employment, the I.S.I.F. would not be liable for any compensation payments if he subsequently lost his second arm. Not only would it be unfair to the employer to hold him liable for the entire disability compensation, but no employer would hire a one-armed person under these conditions. Such a person could be hired only if he had actually had difficulty obtaining employment in the past. The purpose of the I.S.I.F., of course, is to eliminate just such difficulty. The Industrial Commission would defeat the very purpose of I.C. § 72–332 if it presumed that the fact that the claimant was employed precluded his prior injuries or diseases from constituting a hindrance or an obstacle to obtaining employment.

Other jurisdictions faced with this question have split. Some hold that the pre-existing condition must actually interfere with one's employment. *E.g., Rikala v. Rundquist Construction Co.*, 247 Minn. 401, 77 N.W.2d 551 (1956); *Meilves v. Morris,*

422 S.W.2d 335 (Mo.1968). Other cases distinguish between manifest and latent conditions, holding the fund liable for manifest conditions but not latent ones. *E.g., American Mutual Insurance Co. v. Jones*, 426 F.2d 1263 (D.C.Cir.1970); *United States Fidelity & Guaranty Co. v. O'Keeffe*, 240 F.Supp. 813 (S.D.Fla.1962). Others, which we find to be the better reasoned, hold that the pre-existing condition need not actually have interfered with one's employment for the special fund to be liable. *E.g., Employers Commercial Union Insurance Group v. Christ*, 513 P.2d 1090 (Alaska 1973); *Subsequent Injuries Fund v. Industrial Accident Commission*, 56 Cal.2d 842, 17 Cal.Rptr. 144, 366 P.2d 496 (Cal.1961); *Allen United Enterprises v. Special Disability Fund*, 288 So.2d 204 (Fla.1974); *Unit Wall Co. v. Speh*, 133 So.2d 304 (Fla.1961); *Subsequent Injury Fund v. Rinehart*, 12 Md.App. 649, 280 A.2d 298 (1971); *E. I. DuPont de Nemours & Co. v. Friar*, 218 Tenn. 544, 404 S.W.2d 518 (1966). As stated in *Nagorka v. Goldstein*, 4 A.D.2d 904, 167 N.Y.S.2d 118 (1957), where the pre-existing impairment was the claimant's hearing loss:

> "Many handicapped persons are, in fact, able to do their work as well as those free from handicap but there may be a greater risk of injury to them or there may be a risk that, in the event of injury, their total permanent disability will be greater than the disability which would have resulted from the subsequent injury alone. For these and related reasons, employers may be reluctant to employ such persons; the Second Injury Law was designed to overcome this reluctance." *Id.* 167 N.Y.S.2d at 120.

Virtually all of these cases and the statutes involved can be distinguished. We agree with the basic reasoning in those that hold that the condition need not actually have interfered with one's attempts to obtain employment.[3] A "permanent physical im-

---

3. The I.S.I.F. points out that many of the states require that the employer have knowledge of the condition for the employer to be liable. In this regard we need only note that Idaho has no requirement of such knowledge and we will not judicially impose such a requirement. *See, e.*

g., *Subsequent Injuries Fund v. Industrial Accident Commission*, 56 Cal.2d 842, 17 Cal.Rptr. 144, 366 P.2d 496 (1961); *Jacques v. H. O. Penn Machinery Co.*, 166 Conn. 352, 349 A.2d 847 (1974); *Subsequent Injury Fund v. Rinehart*, 12 Md.App. 649, 280 A.2d 298 (1971).

pairment" is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment.

Pressure Treated Timber Co. next argues that this Court should find as a matter of law that claimant in the present case had a pre-existing "permanent physical impairment." It is not the role of this Court, however, to make factual findings in Industrial Commission cases. The question is initially one for the Industrial Commission, applying the definition of "permanent physical impairment" as this day construed.

In this regard, we note that the Industrial Commission ought not ignore all competent medical evidence and rely solely on that presented on claimant's case. As stated in *Madron v. Green Giant Co.,* 94 Idaho 747, 497 P.2d 1048 (1972):

> "We herein recognize, and adhere to the rule . . . that the board cannot arbitrarily reject or ignore competent evidence in making its determinations. . . . The board must weigh all the competent evidence and make its findings according to its assessment of the preponderance of that evidence." *Id.* at 751, 497 P.2d at 1052.

 Finally, Pressure Treated Timber Co. argues that the Commission's finding that 50% of claimant's present disability is attributable to a pre-existing condition and 50% to the 1975 accident is not supported by competent medical testimony. The Commission in making this apportionment relied upon the testimony of Dr. Wolff, who in turn relied on statements by the claimant. Dr. Wolff stated his belief that a man whose work involves lifting and throwing heavy objects around on a truck cannot be said to have a 90% physical impairment of the whole man. The medical panel, on the other hand, based upon a physical examination of the claimant, and a review of his medical history, apportioned 90% of his disability as *due to* the pre-existing condition. Although the evidence is highly conflicting, there is substantial and competent evidence to support the finding of the Commission.

Reversed and remanded for further proceedings consistent with this opinion.

McFADDEN and DONALDSON, JJ., and DUNLAP, J., Pro Tem, concur.

SHEPARD, J., dissents without opinion.