ERVIN, Judge.
The Special Disability Trust Fund (Fund) appeals an order of the deputy commissioner (deputy) directing it to reimburse the employer/carrier (e/c) pursuant to Section 440.49(2), Florida Statutes (1983), for benefits paid to the claimant since May 7, 1984.
It contends that section 440.49(2), requires a finding that the claimant had a preexisting permanent physical impairment *1037 as a prerequisite for the e/c to receive reimbursement from the Fund. Relying on the definition of permanent impairment found in Section 440.02(16), Florida Statutes, the Fund contends that a permanent physical impairment requires an anatomical rating, and, because the claimant did not receive an anatomical rating for his preexisting 1982 injury, there is no competent, substantial evidence which establishes a preexisting permanent physical impairment, as required by section 440.49(2)(a), prior to the May 7, 1984 accident; therefore the order should be reversed. Finding nothing in section 440.49(2)(a) requiring that a permanent impairment rating be given an employee in order to entitle the e/c reimbursement from the Fund, we affirm.
The claimant sustained a low back injury while working for the employer on November 4, 1982, and was off work for six months. He returned with restrictions against lifting over twenty pounds. The restrictions were followed by the employer, and the claimant was given a change of job assignments.
On May 7,1984, claimant was working in the cafeteria and experienced discomfort in his low back muscles when he attempted to lift a six-gallon can of milk. He was treated for possible lumbar strain and released to return to work. When he continued to complain of pain, he was referred to Dr. Kolin, a psychiatrist.
Dr. Kolin opined that claimant reached maximum medical improvement on May 7, 1985, with a five percent permanent psychiatric impairment related to his industrial injury of May 7, 1984. He explained that on several occasions claimant had expressed concern and anxiety about returning to an employment environment which had already caused two back injuries. It was his opinion, which the deputy accepted, that the claimant’s anxiety and concern with returning to employment was the result of a merger of the residuals and sequelae of both industrial accidents sustained while working for the employer, and that this anxiety, caused by the preexisting permanent disability from the first accident, and combined with his continuing concern over his inability to perform his employment duties after the second accident, had merged to cause the claimant to prolong his medical treatment and continue his off-work status. Based upon the above evidence, the deputy directed the Fund to reimburse the e/c for excess expenditures in benefits paid to the claimant since his May 7, 1984 accident.
The language creating the Special Disability Fund was added by Chapter 29778, Section 3, Laws of Florida (1955), creating Section 440.15(5)(d)l, Florida Statutes (1955) (currently Section 440.49(2) (b)l.), which, in defining permanent physical impairment, stated that the term meant “any permanent condition due to previous accident or disease or any congenital condition which is or is likely to be a hindrance or obstacle to employment.” The first decision of the Florida Supreme Court to construe the above statutory language was Unit Wall Co. v. Speh, 133 So.2d 304 (Fla.1961), in which the supreme court rejected the Florida Industrial Commission’s holding, requiring that as a precondition for the worker’s preexisting impaired condition, diabetes mellitus,- to constitute a permanent physical impairment, it must be established that it was in fact disabling and interfering with the employee’s performance of his work duties at the time of the later injury. In Speh, there was nothing in the record showing that the claimant’s diabetic condition had interfered with the performance of his work duties. The court held that the Commission’s interpretation was far too narrow, and instead applied the following test for determining whether the worker’s condition qualified as a permanent physical condition for purposes of allowing the employer reimbursement from the Fund:
We think that any pre-existing disease or condition which is permanent, which is known to the employer, and which would reasonably magnify the extent or result of a subsequent injury leading to permanent disability and thereby increasing the responsibility of the employer under our Workmen’s Compensation Act, is a disease or condition which is or is likely to be a hindrance or obstacle to employment *1038 and within the statutory definition of “permanent physical impairment.”
While the disease or condition may be such that it interferes with the capability or efficiency of the employee in the subject employment it is not required to do so to deserve to be classified as a “permanent physical impairment.” It is enough if the pre-existing condition is such that when merged with a subsequent compensable injury it causes a greater disability than would have been caused by the subsequent injury alone.
Nor do we think that it is necessary that an employer be shown to have evaluated the increased responsibility assumed by him upon the hiring of an employee afflicted with such a disease or condition. It is not necessary that it be shown that the employer considered the disease or condition as a hindrance or obstacle yet nevertheless hired the employee. To require the employer to so act and such to be shown would in many instances defeat the purposes of the Fund.
We think it sufficient if it is shown that the employee had a pre-existing permanent disease or condition which had a potential for and did exaggerate the extent or result of a subsequent compensa-ble injury and that the employer had prior knowledge thereof.
133 So.2d at 308 (emphasis supplied). Thus, in order for an employee’s condition to constitute a permanent physical impairment, it need not be actually disabling in the sense that it interferes with the employee’s performance of his work duties; it need only have a potential for hindering his performance, which did in fact occur by reason of the later injury, that, when combined with the later injury, causes greater permanent disability than would have alone been caused by the later compensable injury. The only remaining requirement for Fund involvement is that the employer must have had prior knowledge of the preexisting permanent condition. The court further amplified upon the definition of permanent physical impairment in Stephens v. Winn-Dixie Stores, Inc., 201 So.2d 731, 737 (Fla.1967), reiterating that the permanent physical condition need not be actually disabling at the time of the second injury to entitle the employer reimbursement from the Fund.
This liberal interpretation of the term permanent physical impairment has continued without modification. See also Allen United Enterprises v. Special Disability Fund, 288 So.2d 204, 208 (Fla.1974) (“[I]t is not necessary that a pre-existing impairment be such as to actually interfere with the employee’s work capabilities or efficiency; it simply has to be a ... condition which is permanent, which is known to the employer, and which would reasonably magnify the extent or result of a subsequent injury.”). Recently this court in Special Disability Trust Fund v. Lakeland Construction Co., 478 So.2d 391, 393 (Fla. 1st DCA 1985), in addressing the definition now appearing in Section 440.49(2)(c)l, Florida Statutes, (1979), stated, “There is no requirement that the preexisting condition, by itself, would be compensable.” And, in Escambia County Council on Aging v. Goldsmith, 500 So.2d 626, 632, n. 5 (Fla. 1st DCA 1986), we explicitly observed that the term permanent physical impairment is not defined the same for purposes of Fund involvement under section 440.49, as opposed to the term’s general definition under Sectioh 440.02(21), Florida Statutes.
Many states in other jurisdictions have placed similar constructions upon their own second injury fund statutes. For example, the state of Idaho, until recently, had a statute which defined permanent physical impairment or condition in terms very similar to that provided in the Florida statute: “As used in this law, ‘permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed.” Idaho Code, section 72-332(2). In its interpretion of the above language, the Supreme Court of Idaho in Gugelman v. Pressure Treated Timber Co., 102 Idaho 356, 630 P.2d 148 (1981), reversed the Industrial Commission’s determination that a *1039 preexisting condition could constitute a hindrance or obstacle to employment only if the condition actually interfered with the claimant’s past attempts to obtain employment. After surveying cases from other jurisdictions,[1] the court agreed “with the basic reasoning in those [cases] that hold that the condition need not actually have interfered with one’s attempts to obtain employment. A ‘permanent physical impairment’ is any permanent condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment.” 630 P.2d at 152-153 (footnote omitted). Thus, the constructions placed upon the similar statutory language by the Supreme Courts of Florida and Idaho are also themselves quite similar: In Speh, the preexisting permanent condition need only have a potential for exaggerating the extent or result of a subsequent compensable injury, and in Gugelman, the prior permanent physical impairment must be one which reasonably could constitute a hindrance or obstacle to the claimant’s obtaining employment or reemployment. Both courts examine the purpose behind the creation of the second injury fund: the legislative recognition that many persons can and in fact are frequently able to do their work as well as those free from handicap; nevertheless, because of their impaired conditions they may face a greater risk of injury which could result in greater permanent disability than the disability that would have been caused by the subsequent injury only. Thus, if employers are forced to bear the burden of paying all compensation benefits in situations where the permanent impairment or disability merged with the employees’ preexisting permanent impairment, it is clear that the primary purpose behind the creation of a second injury fund would be frustrated — the hiring of handicapped workers.
Accordingly, we follow established case law, as well as the legislative intent now expressly stated in section 440.49(2)(a) and extend a liberal interpretation to the employer’s eligiblity for reimbursement from the Fund. In applying such an interpretation, we consider it immaterial that the earlier injury which claimant suffered on November 4, 1982 caused no orthopedic permanent impairment rating. The effect of his injury required that he be removed from the work force for six months. He was, moreover, only permitted to return to work thereafter with restrictions against lifting over twenty pounds. The record as such strongly supports the finding that the employee’s preexisting condition was permanent, in that the restrictions were never removed during the employee’s continued work performance for nearly 18 months, or until the occurrence of the second injury. The preexisting condition was one that clearly had a potential for exaggerating the extent of the subsequent compensable injury. It was therefore altogether reasonable to assume that the earlier condition could have constituted a hindrance or obstacle to the worker’s continued employment.
The evidence in this case meets the requirements of both the statute and the case law. The statutory definition of permanent impairment, requiring an anatomical rating *1040 as contained in section 440.02(16), upon which the Fund relies, governs the award of wage loss benefits, among other things, but has no applicability to the Fund reimbursement statute which has provided its own definition of permanent physical impairment.
AFFIRMED.
SMITH, C.J., and MILLS, J., concur.

. The court noted a split on the question among the jurisdictions, stating:
Some hold that the pre-existing condition must actually interfere with one’s employment. E.g., Rikala v. Rundquist Construction Co., 247 Minn. 401, 77 N.W.2d 551 (1956); Meilves v. Morris, 422 S.W.2d 335 (Mo.1968). Other cases distinguish between manifest and latent conditions, holding the fund liable for manifest conditions but not latent ones. E.g., American Mutual Insurance Co. v. Jones, 426 F.2d 1263 (D.C.Cir.1970); United States Fidelity & Guaranty Co. v. O'Keeffe, 240 F.Supp. 813 (S.D.Fla.1962). Others, which we find to be the better reasoned, hold that the pre-existing condition need not actually have interfered with one’s employment for the special fund to be liable. E.g., Employers Commercial Union Insurance Group v. Christ, 513 P.2d 1090 (Alaska 1973); Subsequent Injuries Fund v. Industrial Accident Commission, 56 Cal.2d 842, 17 Cal.Rptr. 144, 366 P.2d 496 (Cal.1961); Allen United Enterprises v. Special Disability Fund, 288 So.2d 204 (Fla.1974); Unit Wall Co. v. Speh, 133 So.2d 304 (Fla.1961); Subsequent Injury Fund v. Rinehart, 12 Md.App. 649, 280 A.2d 298 (1971); E.I. DuPont de Nemours & Co. v. Friar, 218 Tenn. 544, 404 S.W.2d 518 (1966).
630 P.2d at 152. Significantly, placed in the latter category of cases is the Florida Supreme Court’s opinions in Allen United Enterprises and Speh.